CASULDUC ET AL. *v.* LA COMPAÑIA TRASATLÁNTICA DE HAMBURGO.

APPEAL from the District Court of Ponce.

No. 17.—Decided November 9, 1905.

INJUNCTION—EFFECTS ON PARTIES AND COURT.—The effects of an injunction extend only to the parties litigants and in no way to courts, the jurisdiction of which cannot be invaded nor curtailed by another court, by means of such a writ.

APPEAL—DOCUMENTS NOT PRESENTED IN INFERIOR COURT.—The Supreme Court in considering an appeal cannot in any case take into consideration a document which forms no part of the record of the inferior court.

JOINDER OF ACTIONS.—In accordance with the former Law of Civil Procedure a party may unite several causes of action against several defendants, or several plaintiffs may unite several causes of action against one defendant in one complaint provided the same arose out of the same source or title, or are based upon the same cause of action, and the fact that, considered separately, none of them would amount to the sum fixed by law as the limit to which the court might have jurisdiction, would in no wise affect the jurisdiction of the court to hear and determine the actions so united.

CAUSE OF ACTION—MANNER OF ADJUSTING DIFFERENCES—PROVISIONS OF THE POLICY.—A stipulation in a fire insurance policy that all differences arising between the insurer and the insured as to amount of indemnity in case of fire, should be submitted to the decisions of experts, setting forth the manner in which such experts should be appointed and the method of procedure to be followed, is mandatory, and any settlement in violation of the ex-

press terms of the policy is void and ineffectual and not binding upon the insurer.

DECISION OF ARBITERS.—In order that the decision of experts may be valid and binding, it is an indispensible requisite that the interested parties should select or appoint the experts, and the compromise reached should be set down in a public instrument and the experts should be designated therein; and in the absence of this requisite the same will be null and void.

OBLIGATION.—Obligations arising out of contracts have the force of law between the contracting parties and must be complied with in accordance with the stipulations thereof.

PRINCIPAL—AGENTS.—An agent is bound by his acceptance to comply with his instructions, and he will be liable to his principal for any damages or losses which he may suffer by reason of a failure so to comply with his instructions, and he must not exceed the limits of such instructions; and in case he should do so, his principal will not be liable for the acts executed by him without his authorization, unless he should, expressly or tacitly, ratify the same.

The facts are stated in the opinion.

*Mr. Hernandez Usera* for appellant.

*Mr. Casalduc* for respondents.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

This is an appeal taken by Attorney Frank H. Dexter on behalf of the fire insurance company called "The Transatlantic," of Hamburg, and subsequently continued in this Supreme Court by Attorney Jose Hernandez Usera, as counsel for said company, from a judgment rendered by the former District Court of Ponce, in a declaratory action of greater import brought by Attorney Felipe Casalduc y Goicoechea for himself and on behalf of his coplaintiffs, Luciano Ortiz Anton and Francisco Parro Capo, and the court officer of said district court, Gustavo Rodriguez Acevedo, for the recovery of $850 for fees earned by the plaintiffs in an arbitral proceeding had in the city of Ponce for the purpose of fixing the amount of the indemnity which the company should pay for the value of certain merchandise which had been insured in it by Antonio Rodriguez Garcia, a merchant of that place, and which had been destroyed by fire. For the said board the *alcalde* of Ponce, on behalf of the company and the other interested party, Antonio Rodriguez, appointed as arbiters of

the law the following mentioned attorneys: Felipe Casalduc y Goicoechea, Luciano Ortiz Anton, and Francisco Parra Capo, and the court officer of the district court, Gustavo Rodriguez Acevedo, as secretary and attesting officer of all the acts of the board.

The judgment rendered by the said district court reads as follows:

"*Judgment.*—In the city of Ponce, Island of Porto Rico, March 14, 1904. An oral and public hearing has been had of this declaratory action brought in this court by Attorney Felipe Casalduc y Goicoechea for himself and on behalf of his associates, Luciano Ortiz Anton, Francisco Parra Capo, and Gustavo Rodriguez Acevedo, all of them of age and residents of this town, as plaintiffs, against The Transatlantic Fire Insurance Company of Hamburg (Germany), represented in Porto Rico by its general agents, residing in Aguadilla, Sanders, Philippi & Co., liquidators of Schnabel & Company, a commercial firm doing business in said town, declared in default as defendants, for the recovery of the sum of $850.

"The presiding judge in this court, Isidoro Soto Nussa, prepared the opinion of the court.

"Attorney Felipe Casalduc y Goicoechea, in his complaint of October 3rd of last year against the said insurance company, prayed that the latter be adjudged to pay each of the plaintiffs, Francisco Parra Capo, Luciano Ortiz Anton and Felipe Casalduc y Goicoechea, the sum of $250, and to Gustavo Rodriguez y Acevedo $100, and also that all the costs of the proceedings be taxed against said company. The plaintiffs alleged the following facts in support of their complaint: That by policy No. 5368, in substitution of policy No. 4951, Antonio Rodriguez Garcia, of Ponce, on March 10, 1901, took out insurance against fire in The Transatlantic Company of Hamburg on the merchandise he had stored in a warehouse, No. 17 Market Square, of that city, the company stating in that document that the insurance was made subject to the general and special conditions set forth in the policy under which it was issued; that these conditions were numbered, that bearing No. 15 reading as follows: 'Both the company and the insured shall have the right to obtain the judgment of a court of competent jurisdiction upon all questions relating to the validity of this policy. Any difference which may arise as to the amount of the indemnity shall be settled by arbitration solely, and this before

any judicial action to recover the indemnity shall have been instituted. When the company or the insured shall desire to have the amount of the indemnity fixed by arbitration, the submission to arbitration shall be subject to the following conditions: Each party shall appoint an expert by protocol or in writing. If one of the parties, after having received notice from the other to appoint his expert, and after having been informed of the appointment of an expert by the other party, should not make the appointment of the second expert within one week, the appointment of the second expert shall be made by the consul of Germany or, in his absence, by a local authority of competent jurisdiction. The two experts, before entering upon their duties, shall appoint a third expert to decide in case of disagreement, who shall decide any point in disagreement within the valuation limits made by said experts.' There are other rules not pertinent to this case, paragraph 15 closing as follows: 'The costs of arbitration shall be borne in equal parts by the company and the insured.' That during the night of October 12, 1901, a fire broke out in the commercial establishment of Rodriguez y Garcia in which the goods insured under the policy referred to were stored; that some of such goods were destroyed and others saved; that Rodriguez y Garcia, desiring to have the amount of the indemnity fixed by arbitration in accordance with the terms of condition 15 of the policy, by instrument executed before Notary Rafael Leon, dated February 1, 1902, designated Attorney Felipe Casalduc to be an arbiter, and at the same time requested that notice of this appointment should be served on Christian Boysen y Monserrat, the agent of the company in Ponce, which was done on the same day, on which occasion he was also called on to designate the other expert within the legal term as stipulated in the policy; that the term of one week having more than expired without the agent of the said company having complied with this requisite, Rodriguez executed another instrument before the same notary, Leon, dated February 11, 1902, for the purpose of requiring Enrique C. Fritze, the German consul in said city, to make the appointment of the arbiter in question; and upon this diplomatic agent being notified of this desire, he replied that the designation be made by the local authority of competent jurisdiction; that thereupon, by instrument No. 49 executed before said notary, Leon, under date of February 12, 1902, the *alcalde* of Ponce, Enrique Chevalier, was requested to make the appointment, who, on behalf of The Transatlantic Fire Insurance Company of Hamburg, appointed Attorney Francisco Parra Capo to be the expert to decide the differences in the amount

of the indemnity for damages caused by the fire; and said Casalduc and Parra having accepted their respective appointments, by an instrument executed before said notary, Leon, on February 18, 1902, appointed Attorney Luciano Ortiz Anton as the third expert for the settlement of differences, and upon notice being served upon said Luciano Ortiz Anton by the attesting notary, the appointment was accepted; that according to an instrument dated April 3, 1902, executed before Notary Toro Vendrell, Antonio Rodriguez Garcia, in his own right, and Enrique Chevalier y Chardon, *alcalde* of Ponce, and as the representative of the underwriting company, prepared a statement of facts agreed upon, submitting to the arbiters the question of the settlement of the amount of the indemnity which the company should pay the insured by reason of the fire, fixed the period of thirty-two days for the rendition of a decision, and appointed Gustavo Rodriguez, court officer of the district court, to be the secretary of the board of arbiters, and fixed a fine of $500 as a penalty for failure to comply with any of the findings in the statement; and, finally, stated in the sixth clause that the company and the insured should bear the expense of the arbitration in equal parts; that on April 11, 1902, the arbiters received a certified copy of the statement of facts agreed upon, and in accordance with article 804 of the Law of Civil Procedure, after designating the meeting place of the board, the underwriting company and the insured were, by order of that date, allowed eight days for the presentation of their claims and the documents in support thereof, being warned that the proceedings would be prosecuted in their default and that they would be liable to the payment of the fine stipulated. The said order was served on the parties on April 11th and 14th of said year 1902; on April 18, 1902, the insured, Antonio Rodriguez Garcia, through Attorney Luis Llorens Torres, filed his statement alleging his claims, accompanying the documents on which he based them, and praying for judgment fixing the amount of the indemnity the underwriting company should pay the insured, his client; and as the company did not make answer in due time and form, the plaintiff prayed for judgment by default. The three experts appointed, sitting as a board, accepted the statement and documents of Rodriguez, ordered the default of the defendant entered, and held that said defendant company had incurred the fine of $500. A period of two more days was granted to each of the parties to contest the claims of the adverse party, notice of all of which was served on the parties litigant, on the plaintiff on April 25, and on the defendant on April 28, 1902. The claims of the

plaintiffs not having been contested, the board of arbiters made an order on May 1st granting a period of eight days for the introduction and hearing of evidence; and availing itself of the powers granted it by the second clause of the statement of facts agreed upon, it extended for sixteen days more the period of thirty-two days fixed for the rendition of judgment. On May 3d, counsel for the plaintiff submitted his evidence, which was received by the board, which fixed a day and hour for the appearance of the parties in order to appoint an expert, said date being May 8th, at which only the plaintiff appeared, designating Tomas Torres Grau, who was accepted by the three arbiters. Inasmuch as Francisco Parra, one of the arbiters, had been in bad health while discharging these duties and his condition becoming so aggravated that, on May 8th, he presented a medical certificate showing that his immediate departure from Ponce was urgently necessary, and a written statement to the effect that he was obliged to resign the position of arbiter for this reason, and requested that this fact be communicated to the company and the insured in order that they might appoint a substitute for him. This notice having been served, Enrique Chevalier, the *alcalde* of Ponce, as the representative of The Transatlantic Company, and Antonio Rodriguez, in his own behalf, by an instrument executed before Jose Ramon Becerra, a notary of Ponce, on the 9th of said month of May, by common agreement appointed Attorney Rafael Toro Vendrell as a substitute for Mr. Parra Capo, and he, on the same day, accepted the office in the presence of Notary Becarra, promising to discharge it well and faithfully. This arbitration board, now composed of Luciano Ortiz Anton, Toro Vendrell, as the substitute of Mr. Parra, and Casalduc Goicoechea, with Gustavo Rodriguez, the officer of the court, still acting as secretary of the board, on May 12th heard the report of expert Torres Grau; and, preliminary investigation having been terminated, the board cited the parties for its decision, which was rendered by the arbiters on May 16, 1902, in the presence of the secretary, and notice thereof was served on the plaintiff on May 20th and on the underwriting company on May 31, 1902. This decision having fixed the amount of the indemnity, the underwriting company summoned the insured, Rodriguez, to appear in the District Court of the United States for Porto Rico, where the question of whether the indemnity for the accident should or should not be paid was discussed, the proceedings being settled by compromise. As arbiter Toro Vendrell, who had been appointed in substitution of Parra Capo, assigned to the latter, in consideration of the sum of

$100, his fees as such arbiter, thereby subrogating him to all his rights and actions against the company and Rodriguez; for which reason said Parra Capo. claims the same amount as his two colleagues on the board, and Toro Vendrell does not present any claim. The plaintiffs did the work entrusted to them as arbiters and secretary, respectively, and having fixed the amount of the fees and charges at $500 for each of the arbiters, and $200 for the secretary, ·they made a demand on the representatives of The Transatlantic Company of Hamburg for one-half of the fees due by it; that is to say, for $250 for each arbiter and $100 for the secretary, or for a total of $850, without having been able to recover payment, such fact being the original cause of this complaint.

"The complaint having been admitted by order of October 6th of last year, Attorney Felipe Casalduc Goicoechea was recognized as a party in the action in his own right and on behalf of the other plaintiffs; and it was ordered that service of the complaint should be made on the defendant company by means of the proper summons and the delivery of an uncertified copy of the complaint for answer within a term of twenty days, not extendible, and appearance in the proceedings in legal form.

"The summons was duly served on the defendant on October 14th, The Transatlantic Company of Hamburg, in the person of its general agents in this Island, Sanders, Philippi & Company, residing" in Aguadilla, and a longer time than the period granted by the law for appearance in the action and to make answer to the complaint elapsed, without such right having been availed of.

"The party plaintiff, in his petition of January 19th of the current year, prayed that the default of the defendant company be entered, and at the same time that evidence be heard in the proceedings.

"By order of the same date, the court ordered the default of the defendant company to be entered and answer considered to have been made, and that notice of such order be served on it, which was done on January 21st in the person of its said agents, Sanders, Philippi & Company, in Aguadilla.

"The parties having been summoned to an oral hearing for the submission of evidence, February 12th last being set for this purpose, Attorney Felipe Casalduc was the only one who appeared both for himself and on behalf of his associates, the adverse party failing to appear, he filed a written statement of the evidence he proposed to introduce at the oral trial of this cause, such evidence consisting of

documentary evidence, expert evidence and the testimony of witnesses, and the statement was attached to the record.

"February 29th last, at 9 a. m., having been set for the hearing, the evidence submitted by the plaintiff, Attorney Felipe Casalduc Goicoechea appeared for himself and on behalf of his associates, and Attorney Acosta Quintero on behalf of the defendant company in substitution of F. H. Dexter; and upon the opening of the trial Attorney Acosta pleaded to the jurisdiction, alleging that the claim of each of the plaintiffs was less than $400, and, consequently, that the municipal court had jurisdiction, and prayed the court to so rule on the grounds alleged by him. Counsel for the plaintiffs, being heard, opposed the plea upon the grounds which he stated and submitted to the consideration of the court, which overruled the dilatory exception, with costs, on the ground that it had not been pleaded upon answering the complaint.

"The testimony of the witnesses was as follows: Witness Luis Llorens Torres testified under oath that on behalf and in the name of Antonio Rodriguez he had filed a complaint in an arbitral proceeding against The Transatlantic Company of Hamburg for the purpose of fixing the amount of the indemnity which said company should pay his client by reason of the fire which took place in his warehouse, acknowledging as written by him the signatures to the notices which bear his name in the arbitral proceedings, which notices were shown him. Rafael Toro Vendrell, another witness, also testified under oath that he had been appointed arbiter in place of Francisco Parra in the action brought by Antonio Rodriguez against The Transatlantic Company of Hamburg, and that he had assigned his fees as such arbiter to Parra Capo.

"Upon the expert evidence being introduced, experts and attorneys Horacio Velebal y Veve, Luis Yordan Davila and Jose Fernandez Corona testified under oath that having carefully considered the arbitration proceedings instituted by Antonio Rodriguez against The Transatlantic Company of Hamburg, and taking into consideration that each of said parties must pay one-half of the costs of such arbitration, they did not consider the sum of $250 charged by each arbiter and $100 by the secretary, to The Transatlantic Company of Hamburg, to be excessive, but, on the contrary, very just. The experts described the arbitral proceedings to the court in detail, explaining the work of the arbiters and secretary.

"The evidence submitted by the plaintiff having all been heard, he left the documentary evidence to the consideration of the court;

and the defendant having no evidence to submit, the arguments of counsel were heard in their turn in support of their respective allegations on behalf of their clients, and the proceedings were closed for decision, which was on this date unanimously rendered.

"The provisions of the laws of procedure in force have been observed in the prosecution of this declaratory action.

"The purpose of this litigation is to determine whether the claim of the plaintiffs for the payment of one-half of the fees earned by the arbiters appointed by common agreement between Antonio Rodriguez Garcia and the underwriter, The Transatlantic Company of Hamburg, represented by the local authorities, for the purpose of settling the differences between them as to the payment of the indemnity claimed by the insured on account of the fire which occurred, is or is not well founded.

"The terms of the insurance contract which served as a basis for the claim of the underwriter are clear and explicit in all their clauses, and the claimant should have conformed to the provisions of the contract in presenting his claim to the underwriting company for the payment of the thing insured, but this he was unable to do on account of an agreement with the company not having been reached; for which reason the insured was obliged to seek protection in the law of the written contract itself by availing himself of the power agreed on in said contract, of submitting the settlement of such difference to the decision of arbiters appointed in the manner and form established in said agreement.

"The plaintiff arbiters having been appointed in accordance with the stipulations of the insurance contract by the execution of the proper public instruments, and having accepted their respective offices and discharged their trust in accordance with the legal provisions governing proceedings of this character and with the terms of said contract, the sixth clause of which provides that the fees earned by the arbiters appointed shall be borne by the insured and the underwriting company in equal parts, it is perfectly evident that the latter is directly obliged to pay the sum claimed by the plaintiff arbiters by virtue of said clause, which subjects the contracting parties to compliance therewith in accordance with the provisions of the Civil Code in force and the general principles of law.

"This being the case, and the defendant not having objected to the amount of the fees claimed by the plaintiff arbiters, they must be considered legal and just, especially when the amount of said fees, according to the opinion of the attorneys who testified in these pro-

ceedings as experts, was reasonable and conformed to the character and technical nature of the judicial acts performed by the arbiters. The fees in the judgment of this court are not at all excessive.

"For these reasons, the prayers of the complaint should be allowed, and the costs should be taxed against the adverse party, in accordance with the provisions of General Order No. 118.

"In view of the provisions of sections 1056, 1058, 1063, 1221, 1223, and 1225 of the Civil Code, the applicable provisions of the Law of Civil Procedure, and General Order No. 118, we adjudge that this complaint be sustained, and that we should adjudge, and we do hereby adjudge, The Transatlantic Fire Insurance Company of Hamburg to pay within a period of five days to each of the plaintiffs, Francisco Parra Capo, Luciano Ortiz Anton, and Felipe Casalduc y Goicoechea $250, and to Gustavo Rodriguez Acevedo $100, and we tax the costs against said company. By this, our judgment, pronounced, ordered and signed.—Signed, Ysidoro Soto Nussa. Signed, R. Sanchez Montalvo. Signed, E. B. Wilcox."

Attorney Francis H. Dexter took an appeal from this judgment on behalf of the company, which was allowed both for review and a stay of proceedings, and the parties having been summoned and cited, Attorney Jose Hernandez Usera entered an appearance on behalf of the appellant, submitted the copies prescribed by the new Code of Civil Procedure which had already gone into effect on that date, and presented his brief praying for the reversal of the judgment appealed from, with the costs against the plaintiffs, and alleged the following legal grounds in support of his petition:

"1. With regard to the form, we may say that article 485 of the Law of Civil Procedure provides: 'All questions between parties in which the amount involved does not exceed 1,000 *pesetas,* shall be decided in an oral action;' and although General Order No. 118, Series of 1899, raised the amount for jurisdiction of municipal courts to the sum of $400, such sum refers always to questions between parties— that is to say, to the right the plaintiff may have with respect to the defendant, but not to the right which different plaintiffs may have with respect to the same defendant. We agree that a plaintiff may unite in a single complaint as many causes of action which he may have against one and the same defendant by reason of the amount,

even though they proceed from different titles, provided they are not incompatible (article 153 of the Law of Civil Procedure), but we cannot admit that a number of plaintiffs may unite their causes of action in a single complaint against one defendant, changing the nature of the action by such consolidation. The claim of Casalduc, Ortiz Anton and Parra Capo is a claim for $250 each, and they are consequently different plaintiffs and should enforce their rights, if they have any, separately, but not unite their causes of action against the same defendant and convert the proceedings into a declaratory action of greater import by virtue of such improper consolidation, when different verbal actions should have been brought in the proper municipal court, which is that of Aguadilla.

"2. It is true that it was agreed in the insurance policy that any difference which might arise between the parties by reason of the amount of the indemnity in case of accident was to be fixed by arbiters, but such arbiters are always selected and designated by the parties and *not by third persons,* inasmuch as they are compounders of differences. When The Transatlantic Company did not agree to the appointment of arbiters and did not designate any, Rodriguez Garcia could not create the arbiters at his pleasure, and if he did create them with the assistance and intervention of the *alcalde* of Ponce, Enrique Chevalier, the former on account of his audacity and the latter on account of his ignorance should be the ones really who should pay the fees claimed.

"Article 790 of the Law of Civil Procedure is very clear and explicit; it provides (paragraph 4): 'In no case can the interested parties grant to a *third person* the power to select or appoint any of the arbiters.'

"This is a particularly *personal* act, and cannot therefore be delegated to a third person. Hence, if the interested parties themselves cannot under the law designate such third person to appoint arbiters, how can the *alcalde,* who is a third person, possibly designate them under said Law of Civil Procedure?

"3. In settlements by arbitration, everything is subject and subordinate to the will of the contracting parties, and if there be no agreement between them, there can be no settlement by arbitration. Such settlement is not imposed by the law, but is left to the will of the parties. On the other hand, it is known that an agent even requires a special power of attorney for the appointment of arbiters. Where is the special power of attorney from The Transatlantic Company to *Alcalde* Chevalier authorizing him to appoint arbiters?

"4. Garcia y Rodriguez has received from The Transatlantic Fire Insurance Company, independently of the amount fixed by the arbiters, the damages suffered by his commercial establishment, and there has not been nor is there any necessity of arbiters for the collection thereof.

"5. Section 4 of the Civil Code provides that all acts executed contrary to the provisions of law are void. Hence, as the Law of Civil Procedure specifically provides that the appointment of arbiters is a personal act and cannot be made by third persons, then everything done in these arbitration proceedings is void.

"6. Article 1281 of the Law of Civil Procedure provides that, with regard to the mode of procedure in compromises and the extent and effects thereof, the provisions of the Law of Procedure shall apply."

The respondents not having entered an appearance, notwithstanding the fact that they had been cited and summoned through their representative, a day was set for the hearing. At this stage of the proceedings, counsel for the appellant company filed a new petition, accompanied by a certificate issued by the clerk of the District Court of the United States for Porto Rico, of a preliminary injunction issued by said district court on October 12, 1904, in proceedings instituted in said court by The Transatlantic Fire Insurance Company against Felipe Casalduc Goicoechea, Luciano Ortiz Anton, Francisco Parra Capo, and Gustavo Rodriguez Acevedo, enjoining them from collecting any sum from said company as fees on account of their intervention in the arbitration proceedings referred to, and directing them to refrain from continuing the action brought by them in the District Court of Ponce against the said company for the recovery of such fees, and to suspend it, as well as to refrain from carrying to execution any judgment which might be pending fulfillment rendered in said action.

Together with this certificate, he presented another, issued by the same clerk, of the interlocutory judgment rendered by the said United States District Court on April 3d of the current year, continuing in force the preliminary injunction re-

ferred to until further orders of the court; and, finally, another certificate, issued by the said clerk, of an order made by the District Court of Ponce on April 18, 1902, on file in said United States District Court, directing the transmission to said Federal Court of certain records on file in said district court, of the proceedings brought by Antonio Rodríguez García against The Transatlantic Insurance Company for the recovery of insurance; these documents, as well as a supplementary brief presented the day before that set for the hearing, counsel for the company stated he submitted to the consideration of this court for such effect as they might have in these proceedings in the high judgment of the court.

Now then, a number of questions are deduced from all these antecedents, the first one, which may be classified as preliminary, being that relating to the effect of the writ of injunction issued by the United States District Court for Porto Rico against the plaintiffs, Felipe Casalduc Goicoechea, Luciano Ortiz Anton, Francisco Parra Capo, and Gustavo Rodriguez Acevedo in relation to this action brought by them against The Transatlantic Fire Insurance Company for the recovery of the fees earned in the arbitration proceedings referred to pending on appeal before this Supreme Court.

With respect to this question, the undersigned judge is of the opinion that although the plaintiffs in this action are obliged to abide by, respect and comply with this writ of injunction issued against them by the Federal Court in all its parts, under the penalty imposed upon them by law, this is understood to be without prejudice to the jurisdiction of this Supreme Court to continue taking cognizance of the appeal pending before it, inasmuch as the persons interested have not prayed for anything to the contrary, nor does the writ of injunction contain any provision by which the jurisdiction of this Supreme Court could be considered to have been so invaded as to cause it to abstain from continuing to take cognizance of the appeal; nor could it contain such provision because injunctions issue only in favor of or against a person,

but not against courts of justice, under the principles govern-
ing American jurisprudence. This is corroborated by the
first section of the act passed by the Legislative Assembly
of this Island and approved on March 1, 1902, authorizing
injunctions, according to which "An injunction is a judicial
command in writing issued under the seal of a court in a civil
action directing a person to refrain from doing or permitting
to be done by others under his control a particular act which
violates a right of another." From this it is to be deduced
that it is a remedy granted by the law to prevent the damage
which one person may cause to the rights or interests of a
third person, the effects of which, consequently, can extend
only to the parties litigant, but in no way to the courts of
justice the jurisdiction of which cannot be invaded nor cur-
tailed by another court by means of a writ of this character.

Apart from this, as these documents were not presented
in the first instance and could not have been presented then
because they are of a date subsequent to that of the judg-
ment, they do not form part of the record, and, consequently,
this court cannot take them into consideration for any pur-
pose whatsoever.

The second question arising in these proceedings, which is
also of a preliminary character, is that relating to the lack of
jurisdiction of the former District Court of Ponce to take
cognizance of this litigation owing to the uniting, improperly
in the opinion of counsel for The Transatlantic Company,
in a single complaint, of different causes of action corre-
sponding to different individuals, each of which should have
been the subject of a different complaint against the insur-
ance company, for the sum of $400, which, therefore, should
have been prosecuted in an oral action in the Municipal Court
of Ponce and not in an action of greater import in the district
court, which consequently lacked jurisdiction to take cogni-
zance thereof in the first instance. This argument, advanced
by counsel for the company at the trial and repeated subse-
quently in this appeal, has no value because (the complaint

having been filed and the action having been prosecuted through all its stages in accordance with the provisions of the Law of Civil Procedure) article 156 of said law authorized the uniting in a single complaint of the causes of action of one person against a number, or of a number of persons against one, provided they arose from the same source or title, or were based upon the same cause of action, as occurs in this case, in which the joined causes of action of the plaintiff arise from the compromise entered into by Antonio Rodriguez and The Transatlantic Company appointing the arbiters to fix the amount of the indemnity to be paid the former for the value of the merchandise destroyed by fire and from his intervention in the arbitration proceedings held as a consequence thereof.

Having disposed of these preliminary questions, let us now consider the main question at issue in this appeal, which is reduced to determining whether the defendant company is or is not obliged to pay the fees claimed by the plaintiffs, Felipe Casalduc Goicoechea, Luciano Ortiz Anton, Francisco Parra Capo, and Gustavo Rodriguez Acevedo.

The plaintiffs base their complaint on Clause XV of the policy issued by The Transatlantic Fire Insurance Company to Antonio Rodriguez Garcia, on March 10, 1902, under which any differences arising between the insured and the underwriting company as to the amount of the indemnity to be paid by the company to the insured, Rodriguez Garcia, should be settled by arbitration in the manner prescribed by said Clause XV; and that the case provided for in said clause having arisen, and the three first named having been appointed arbiters, that is to say, Felipe Casalduc y Goicoechea, Luciano Ortiz Anton, and Francisco Parra Capo, and the court officer of the district court, Gustavo Rodriguez Acevedo, having been appointed secretary to certify all the acts of the board, the insurance company was obliged to pay them one-half the fees they had earned, that is to say, $250 to each of the arbiters and $100 to the secretary, in compliance with the pro-

visions of said Clause XV and the agreement of compromise to the effect that both parties would divide the cost of the arbitration.

But the undersigned justice is of the opinion that the arbitration in question has not been conducted in the manner prescribed in Clause XV of the policy referred to, and, consequently, that the defendant company is not bound to pay the costs claimed by the plaintiffs.

The pertinent sections of Clause XV, the application of which is involved in these proceedings, reads as follows:

"Any differences which may arise with regard to the amount of the indemnity shall be settled by arbitration solely, and this before any judicial action to recover the indemnity shall have been instituted.

"When the company or the insured shall desire to have the amount of the indemnity fixed by arbitration, the submission to arbitration shall be subject to the following conditions:

"Each party shall appoint an expert by protocol or in writing.

"If one of the parties, after having received notice from the other to appoint his expert, and after having been informed of the appointment of an expert by the other party should not make the appointment of the second expert within one week, the appointment of the second expert shall be made by the German consul or, in his absence, by the local authority of competent jurisdiction.

"The two experts, before entering upon their duties, shall appoint a third expert to decide in case of disagreement, whose decision shall be final upon any point in disagreement, within the valuation made by said experts.

"In the event of the two experts appointed not being able to reach an agreement with respect to the appointment of the third expert, the latter shall be appointed by the German consul or another local authority of competent jurisdiction, on the petition of both experts or of one of them alone.

"The costs of the arbitration shall be borne in equal parts by the company and the insured."

Clause XV of the policy under consideration contains other stipulations which, however, are not applicable to this case.

Now then, in view of the liberal tenor of the clause in question, the undersigned justice is of the opinion that it did not authorize the representatives of the insurance company to submit the settlement of its differences, as to the amount of the indemnity due on account of the damage caused by the fire, to arbiters of law, nor did it require the appointees to be lawyers and the obligatory intervention of a secretary to attest their acts, but to experts acquainted with the matter the subject of arbitration, as is to be inferred from the literal context of said clause in all its parts, and who were to be appointed in the manner therein set forth to decide the matters submitted to them mentioned in Clause XV of the policy, without the formality of an action and to the best of their knowledge and belief.

Consequently, if in contravention of the express agreement contained in Clause XV in question, the insured, Antonio Rodriguez Garcia, and the *alcalde* of Ponce, Enrique Chevalier, on behalf of the underwriting company, instead of appointing one expert for each party to settle their differences as to the amount of the indemnity to be paid Rodriguez Garcia for the value of his merchandise destroyed by fire, without the formality of an action and according to the best of their knowledge and belief, submitted the settlement of the differences which had arisen between the insured and the underwriting company to arbiters of law, which, as has been said, required the appointees to be lawyers and the intervention of a secretary to attest all the acts of the board; and which, in addition, required the prosecution of an action through all its stages and with all the formalities required by the former Law of Civil Procedure, thus perverting completely the agreement entered into between the parties and, as was natural, causing them greater expense, the arbitration judgment thus secured is void as it cannot produce any binding effects whatsoever against the defendant company; both because the compromise was entered into by the representative of the company who went beyond the scope of the instruc-

tions contained in Clause XV of the policy, as on account of the form it was entered into, inasmuch as the rule established in the policy for the appointment of a third expert to decide in case of disagreement having been improperly applied in the appointment of the third arbiter, Arbiters Casalduc and Parra Capo were in their turn led to appoint a third árbiter, Ortiz Anton, which appointment made the proceedings null and void in every respect; because while this procedure, which was established in the policy for the appointment of a third expert in case of disagreement, would have been perfectly valid and effectual if simple expert proceedings had been involved, it was absolutely invalid and ineffectual for an action by arbiters, in accordance with article 790 of the former Law of Civil Procedure in force when said compromise was entered into, according to which "In no case can the interested parties grant to a third person the power to select or appoint any of the arbiters;" and their appointment is precisely one of the requisites which the written compromise should contain under penalty of nullity, as prescribed by the two following articles of the same Law of Procedure.

In view of all the considerations stated and the provisions of the said articles of the Law of Procedure, and sections 1058, 1616, 1620, 1621, and 1629 of the Civil Code in force, which reproduce exactly the provisions of articles 1091, 1714, 1718, 1719 and 1727 of the former Code, the first of which, that is to say, section 1058 being of general application to all contracts, according to which "Obligations arising from contracts have legal force between the contracting parties and must be fulfilled in accordance with the terms thereof;" and the last four of special application to the contract of agency according to which "an agent cannot exceed the scope of his authority;" "an agent by his acceptance remains bound to fulfill the agency and shall be liable for the losses and damages caused to the principal through his noncompliance;" "in complying with the agency the agent shall follow the instructions of the principal;" and "a principal is liable, in so

far as the agent has exceeded his power, only when he ratifies the act, expressly or impliedly,'' which has not occurred in this case; and the undersigned justice, in view of all these provisions of law, is of the opinion that the arbiters appointed by Antonio Rodriguez Garcia and the *alcalde* of Ponce, Enrique Chevalier, the former in his own right and the latter as the representative of The Transatlantic Insurance Company, have no cause of action to compel the latter to pay them the fees they claim for their services in the arbitration proceedings referred to, owing to their having been appointed in violation of the provisions contained in Clause XV of the insurance policy; and, consequently, that the judgment rendered by the former District Court of Ponce, adjudging the defendant company to pay the fees sought to be recovered by the alleged arbiters, has been rendered in error and should be reversed, judgment is rendered in favor of the said company, with the costs of both instances against the plaintiffs, Felipe Casalduc Goicoechea, Luciano Ortiz Anton and Francisco Parra Capo, and Gustavo Rodriguez Acevedo.

*Reversed.*

Justices Hernandez, Figueras, MacLeary and Wolf concurred.